## BAYARD v. GILLASSPY.

May 30, 1836.

*Motion for judgment for want of an affidavit of defence.*

In debt upon an award under a submission voluntarily entered into by an executor, the executor is bound to make an *affidavit* of defence, under the 2d section of the act of the 28th of March 1835.

In debt upon an award under such submission, it was held that the submission and award constitute an instrument of writing for the payment of money within the meaning of the 2d section of the act of 28th of March 1835, entitling the plaintiff to judgment for want of an *affidavit* of defence.

THIS was an action of *debt*, brought to the January return day of December term 1835, by James A. Bayard against Mary Gillasspy executrix of the late George Gillasspy deceased. On the 12th of January 1836 the plaintiff filed a copy of what he alleged to be the *instrument of writing* on which the suit was brought, being a *submission* and *award* as follows:

" *Submission.*—The following are the terms of reference agreed upon between James A. Bayard of the city of Wilmington, and Mary Gillasspy executrix of the late George Gillasspy of the city of Philadelphia, for the settlement of all matters in difference between them.

" 1st. It is agreed between the parties that all matters in difference between them shall be and are hereby referred to Thomas I. Wharton, Esq., of the city of Philadelphia, as an arbitrator, whose award shall be final and binding upon them.

" 2d. The subject matter of the reference includes the following claims of the said James A. Bayard against the estate of the said George Gillasspy. First: Those arising under a certain deed poll of Mrs Ann Bayard bearing date the 12th of October 1830, whereby the said Ann Bayard assigned to the said James A. Bayard all sums of money due from the said George Gillasspy, as well on a certain

[Bayard v. Gillasspy.]

obligation bearing date the 7th of October 1819, as on account of moneys received by the said George Gillasspy as agent of the said Ann Bayard, and not paid over or accounted for by him. Second: Those arising under certain articles of agreement between the said Ann Bayard of the first part, her children of the second part, and the said James A. Bayard of the third part, bearing date the 26th of December 1830, whereby the said James A. Bayard was authorized to settle the trusts which had been created by a certain indenture bearing date the 12th of April 1821, between the said Ann Bayard of the one part, and the said James A. Bayard and George Gillasspy of the other part. Third: Those arising in his own right, or as assignee of his brothers and sister or of any of them.

"On the part of the said Mary Gillasspy, executrix as aforesaid, this reference includes all claims of the late George Gillaspy against the said Ann Bayard.

"3d. It is agreed that after the 20th day of June next, the said arbitrator shall have power to proceed *ex parte* upon giving ten days, notice to the parties of the time and place of hearing, if either party should neglect to attend.

"4th. It is agreed that the compensation of the said arbitrator shall be paid equally by the parties.

"J. A. BAYARD.
"Wilmington, May 7th, 1834.　　　"MARY GILLASSPY."

"*Award.*—I Thomas I. Wharton, the arbitrator within named, having taken upon myself the burthen of the reference within mentioned; and having heard and fully weighed and considered the allegations of the parties respectively, and all the accounts, proofs and vouchers produced before me, do award: First. That there is due to the within mentioned James A. Bayard, Esq., upon the within mentioned bond or obligation of the said George Gillaspy dated the 7th day of October A. D. 1819, the sum of 7921 dollars and 83 cents, principal and interest, the interest being computed to the 1st day of September instant. Second. That there was due to the said James A. Bayard, Esq. by the said George Gillasspy, at the time of his death, upon the several other accounts within mentioned, the sum of 5727 dollars and 7 cents, making altogether the sum of 13,648 dollars and 90 cents, which sum I award to be paid by the said Mary Gillasspy within mentioned, executrix of the said George Gillasspy deceased, to the said James A. Bayard, Esq., in full satisfaction of all claims.

I.—2 H

[Bayard v. Gillasspy.]

"Witness my hand and seal at Philadelphia this 5th day of September, A. D. 1835.

"T. I. WHARTON, [L. S.]"

The plaintiff also filed on the same day a *declaration in debt* for the said sum of 13,648 dollars 90 cents, reciting the said submission and award.

No *affidavit* of defence having been filed the plaintiff moved for judgment, under the 2d section of the act of the 28th of March 1835. The court granted a rule to show cause why the judgment should not be entered. On the return of the rule,

*Ingraham*, for the defendant, made two points. 1. That an *affidavit* of defence was not necessary as the defendant was sued as executrix : and 2. That the action was not brought upon an *instrument of writing* for the *payment of money*, as the act of assembly requires.

*H. D. Gilpin*, for the plaintiff, contended : 1. That even if it were settled that an executor was not called upon to make an *affidavit* of defence where the subject matter of the suit might not be within his personal knowledge, yet that such a rule could not apply in a case like this, in which the submission was actually made and signed by the executrix, and the whole investigation before the referee had been conducted under her own direction : and 2. That the spirit of the act embraced the case, and that as the written submission created the obligation to pay such an amount as the written award should fix, there was plainly an instrument of writing for the payment of money. He cited, 2 *Strange* 923 ; 7 *T. Rep.* 348 ; *Add. Rep.* 224.

PETTIT, *President.*—The first question is easily resolved. Whatever might be the decision in a case in which the executor could not be so well acquainted with the matter in contest as his testator might have been, yet where, as in the present instance, the executrix, having voluntarily entered into a submission, had a full opportunity of becoming informed in relation to the grounds and merits of the controversy, there is no reason, founded upon the representative character of the defendant, for dispensing with an *affidavit* of defence. Upon this point, the judges concur in opinion.

The other question is not free from difficulty. The majority of the members of the court however are of opinion that the plaintiff is

[Bayard v. Gillasspy.]

entitled to a judgment. The *submission* contemplates the payment of money. This is not the less true because it may comprehend something else. I think the act of assembly should be construed liberally whenever such a course is necessary to promote the object of giving a judgment promptly and without expense, in cases in which there is no defence; as it should receive a liberal construction also in favour of an *affidavit* of defence, where a real defence exists. But no latitude of interpretation seems to be here required. The submission is a mutual obligation that one party shall pay and the other shall receive the sum of money which the *award* shall designate. The award fixes the amount in the very manner which the parties expressly prescribed and marked out for that purpose. The submission is in the nature of an authority to the arbitrator to bind the parties to the extent of the terms employed; and in the instance before us, to bind either of them to the payment of money. The award that there is a sum of money due from the defendant to the plaintiff is but an execution of this authority. Taken together, the submission and award constitute one instrument of writing, and that is for the payment of money. It has not the compulsory character of a judgment. It is an instrument which was voluntary in its origin, and which, in its conclusion, was in accordance with the compact and direction of the parties. It is complete in itself. It is free from any qualification, either contingent, collateral or conditional. It is positive as to the undertaking and certain as to the amount. The contract, which was but executory under the submission, has become fixed and irrevocable by the award. Though the finding might have been the other way, it is sufficient that it is now in favour of the plaintiff, according to the authority given by the defendant. If it be competent to a party to bind himself to pay money through an instrument executed under his authority by another hand, why should not such an obligation be deemed to be within the act? It is within its spirit; it is not excluded by its words. An instrument which directly binds the party to the payment of money is all that the law requires, no matter by what process the result may be reached. I hold every such instrument to be comprehended without any breadth or equity of construction. The criterion is, does the instrument directly bind the defendant to pay money? If so, it is *ejusdem generis* with bills, notes and bonds. When the award is once made, it cannot be separated from the submission. Common reason views them in connection with each other, and technical law can keep them apart only by a refinement

too nice for practical operation. The submission is indispensable to the support of the action on the award. Indeed the action rests upon both. Upon the whole I am of opinion that the paper filed is within a strict construction of the 2d section of the act of the 28th of March 1835. Looking to the general intent of the law, a more appropriate case for its operation could hardly be suggested. The rule is to be made absolute.

STROUD, J. concurred.

JONES, J.—It appears to me that the submission and award filed in this case do not, either separately or together, coustitute an instrument of writing within the meaning of the act of the 28th of March 1835, section 2.

*The submission* is a contract and an instrument of writing between the parties, but it has been fully executed, and no action can now be maintained upon it by either party, because no breach of its terms could be truly assigned. If the non performance of the award were a breach of the contract of submission, then an *action might* be maintained upon the submission for that cause. But the rules of pleading would not allow such an action, which proves that the liability created by the award is distinct from that created by the submission. The act however intends instruments of writing upon which an action may be brought.

Besides, it is not an instrument of writing *for the payment of money.* The character of an instrument is fixed upon its execution; it is not variable and dependent, in that respect, upon the conduct of the parties under it, or in violation of its terms. If this instrument could not with propriety be denominated an instrument for the payment of money on the 7th of May 1834, the day of its execution, looking at it while it was executory, it cannot now be denominated such, looking at it retrospectively from the award. At that time it was a revocable instrument, and it continued to be revocable by act of law, or by the act of either party so long as it was executory. Now a revocable instrument is not absolutely binding to any purpose. If either party had revoked the submission, the other would have been invested by that act with a cause of action; but an action brought upon the instrument for that cause would not have been within this section. While the instrument remained executory, the ultimate duty was in suspense; it could not be known what duty would be imposed by the arbitrator, nor the extent of it, nor upon which of

[Bayard v. Gillasspy.]

them it would be imposed. Nothing appears in the submission to show that each did not claim a balance against the other. The arbitrator might have awarded that their claims were balanced, or the performance of some act by one or both, different from the payment of money. Now such an instrument is quite different from the obligation incurred by the obligor, maker or drawer of a bond, note or bill. No person thus bound could ever have an action on the instrument against the obligee, payee or drawer. Yet here the object of the instrument was as much to bind the plaintiff as the defendant; and if Mr Bayard had revoked the submission, Mrs Gillasspy might have maintained against him an action on the instrument for that cause. In those cases also there is no uncertainty as to the nature or extent of the duty incurred. That is fixed irrevocably by the instrument itself, and such, I apprehend, is the nature of all instruments within the meaning of this section. The legislature first enumerates *bills, notes, bonds*; then follows the phrase, " or other instruments of writing for the payment of money," meaning instruments *ejusdem generis*. The sentence is elliptical; it means instruments executed by the defendant only, unilateral acts or obligations, and not reciprocal obligations, where there is no *debitum in præsenti* arising from it, and due by one party to the other. I lay the submission therefore out of the question.

But is not the *award* an instrument of writing within the meaning of the act? This is the second question. An award is not a contract, nor strictly speaking an *instrument* of writing. An instrument is an act between parties. It is the evidence of a contract or transaction *in pais*. But an award, though not *in curiâ*, is *quasi* a judicial act; it operates *in invitum*, like a judgment, but at the common law it cannot be enforced by execution. Awards are not mentioned nor described in the section under consideration. Yet judgments are. The legislature proceeds by way of specification, intending evidently not to embrace within it all causes of action, nor all forms of action. It is observable that *actions of debt* upon judgments are not included. Why omit them? Why omit awards? It is not for us to inquire into the reasons for discrimination. We can go no further than the act goes. I cannot agree that this act should be extended by an equitable construction. The act, it is fairly presumable, specifies all that the legislature intended : to enlarge it would be, in effect, to make new specifications. This is not a remedial act, in the proper sense. It does not profess to give a new remedy where none

existed before.    The effect of it is to dispense the plaintiff from the obligation to prove his case in the common course, unless the defendant will swear that he has a defence, and disclose its nature and character.    It therefore deprives the defendant of the power of putting his case before a jury by plea merely ; yet this is nothing more than the common right.    The plaintiff alleges his cause *without oath ;* the defendant, according to the common course, is allowed to allege his defence without oath ; and the court conclude nothing against either, as to his right, till the jury have passed upon their proofs. Why should we enlarge this act by construction, in abridgement of common right, and in favour of the plaintiffs ?    It appears to me that sound principles of exposition forbid us to do so.

The only remaining point is, whether the two papers filed in the cause may be considered *one* instrument, within the meaning of this act.    It is said the submission contemplates an award of money ; and therefore the award when made may relate to the submission, and cure its defects as an instrument when taken by itself.    If that view of the matter be correct, the action should have been brought on the submission.    The words of the act are : " in all actions instituted, &c. on *instruments*, &c., the plaintiff may have judgment, provided he shall file, &c. " *a copy of the instrument of writing on which the action has been brought.*"    Now this action is brought, not on the submission, but on the award.    The real complaint is not that the defendant revoked the submission, but that she will not perform the duty imposed by the award.    The submission, it is true, is alleged as inducement to the action, and without that the declaration would be defective ; but the *gist* of the action is the award.    This idea is the converse of the proposition which the plaintiff ought to establish.    It creates a difficulty touching the form of the action, unless he intended to proceed in the common course : for if the submission be *the instrument*, the action is not founded upon it ; if the award be the principal thing, the idea of making it relate to the submission is irrelevant to the question.    But this proposition cannot be supported.    In the first place, the submission does not contemplate the payment of a sum of money by this defendant to the plaintiff.    It is not necessary to repeat the observations made on this point.    Again, if the award in law becomes a part of the submission by relation, and in that manner partakes of the nature of a contract, how is it that different forms of actions are appropriated by the law to the submission and the award ?    Why are mutual bonds taken so frequently to secure the

[Bayard v. Gillasspy.]

performance of awards? A submission is the act of the parties; an award is the act of arbitrators, or an umpire. The award cannot change the nature of the contract, nor make *it as an instrument* certain in respect of the liabilities of the parties. The certainty is in the award. Hence the action of debt is appropriated to it. Hence this action is brought upon the award and not on the submission. I cannot perceive, therefore, how the award can aid the submission, or the submission aid the award, for the purpose of this application; and I think the judgment ought to be refused.

Rule absolute.